# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| SHANE MCCLANAHAN, <br><br> Plaintiff, <br><br> vs. <br><br> LEROY KIRKEGARD, et al., <br><br> Defendants. | Cause No. CV 13-0002-H-DLC-RKS <br><br> FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

## SYNOPSIS

Plaintiff Shane McClanahan alleges Defendants violated his Eighth Amendment and Due Process rights under the United States Constitution during his incarceration at the Great Falls Regional Prison and Montana State Prison. Mr. McClanahan's allegations fail to state a claim upon which relief may be granted because the allegations do not allwge specific conduct by the Defendants and do not implicate a liberty interest. This matter should be dismissed.

## JURISDICTION

Mr. McClanahan filed this action in federal court, in the Helena Division of the District of Montana. CD 2. The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R.

1

Civ. P. 4(b). Read liberally, the Amended Complaint may attempt to allege violations under 42 U.S.C. § 1983, invoking subject matter jurisdiction. 28 U.S.C. § 1331, 28 U.S.C. § 1343(a). The case was assigned to Hon. Dana L. Christensen, United States District Court Judge, and referred to this Court in compliance with Local Rule 73.1(a)(1).

## STATUS

Mr. McClanahan is a prisoner proceeding in forma pauperis and his Complaints are therefore subject to review before service under 28 U.S.C. § 1915, 1915A. A pre-service review of Mr. McClanahan's original Complaint found that it failed to state a claim upon which relief may be granted. Mr. McClanahan was granted leave to amend his Complaint (CD 9) and on April 23, 2013, he filed an Amended Complaint. CD 10. The Amended Complaint must be dismissed upon review if it is found to be frivolous, fails to state a claim, or seeks monetary damage from an immune party. 28 U.S.C. §§ 1915, 1915A.

## STANDARDS

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation omitted); cf. Fed.R.Civ.P. 8(f) ("All pleadings shall be so

construed as to do substantial justice").

   A. **Pleading Standard**

A complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility is less than probability, but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Pleadings that are no more than conclusions are not entitled to the presumption of truth and may be disregarded. Id. at 679. A plaintiff must plead the essential elements of a claim to avoid dismissal for failure to state a claim. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

   B. **Leave to amend**

Leave to amend a complaint should be given freely "when justice so requires." Fed. R. Civ. P. 15. However, a district court should dismiss a complaint without granting leave to amend if amendments would be futile. Klamath Lake Pharmaceutical Ass'n v. Klamath Medical Services Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983). "Leave to amend need not be given if a complaint, as amended,

would be subject to dismissal." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989). The court liberally construes pro se pleadings. See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

**C. 42 U.S.C. § 1983**

**Due Process**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a protected interest.

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Ramirez v. Galaza, 334 F.3d 850, 860 (9th

Cir. 2003). Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Ramirez, 334 F.3d at 861 (citing Sandin, 515 U.S. at 486-87); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). A failure to follow prison procedures does not, in and of itself, give rise to a liberty interest. Sandin, 515 U.S. at 483.

Prisoners also have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). But neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). If a state employee loses or steals an inmate's property and the state provides a meaningful post-deprivation remedy, there is no claim under the Due Process Clause. Id. The Montana Tort Claims Act, Mont. Code Ann. §§ 2-9-101, et seq., provides a post-deprivation remedy.

5

## Cruel and Unusual Punishment

A plaintiff alleging that conditions of confinement amount to cruel and unusual punishment prohibited by the Eighth Amendment must satisfy a two-prong test. Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a plaintiff must satisfy an objective test showing that "he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, courts consider the circumstances, nature, and duration of the deprivation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Second, a plaintiff must prove that the prison official inflicted the deprivation with a "sufficiently culpable state of mind," that is, with "deliberate indifference" to his health or safety. Farmer, 511 U.S. at 834.

## Denial of Mental Health Care

To state a § 1983 claim for failure to provide medical care, including mental health care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).

In the Ninth Circuit, the test for deliberate indifference to medical needs is

two-pronged: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012)(quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The second prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 quoting Jett, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. U.S., 838 F.2d 390, 394 (9th Cir. 1988)(citing Estelle, 429 U.S. at 104-05). Allegations that treatment has been requested and denied because a difference of opinion with medical staff, absent more, do not state a claim for deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### Transfer

Prisoners have no constitutional right to incarceration in a particular institution. Olim v. Wakinekona, 461 U.S. 238, 244–48 (1983); Meachum, 427

7

U.S. at 224–25 (1976). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002). A prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (citing Meachum, 427 U.S. at 224–25) (intrastate prison transfer does not implicate Due Process Clause), and Olim, 461 U.S. at 244–48 (interstate prison transfer does not implicate Due Process Clause).

## FACTUAL ALLEGATIONS

For purposes of this review, Mr. McClanahan's factual allegations are presumed to be true so long as they have some factual support. Unsupported legal conclusions, however, are disregarded.

**Discipline at Great Falls Regional Prison–September 2012**

On September 1, 2012, Mr. McClanahan was attacked by another inmate in his cell at the Great Falls Regional Prison. He defended himself with minimal force and the other inmate was locked up as a result. Mr. McClanahan stayed in the unit in general population. CD 10, p. 6.

On September 14, 2012, Defendants Polk, SS Grubb, C. DeBolt, D.

8

Reardon, K. Patterson, H. Trombly, and D. Bryce who were guards from a different shift told Mr. McClanahan that they were instructed by Montana State Prison guards M Steyh, R. Wigert and C. Neubauer to dismiss the disciplinary actions against the other inmate and generate "bogus" incident reports against Mr. McClanahan. CD 10, p. 6. Mr. McClanahan was locked up in "A-1" and the guards from the Great Falls Regional Prison named as Defendants above acted as the investigators and hearing officers and disciplined him on September 19, 2012.

Mr. McClanahan alleges these Defendants violated prison policy by (1) acting as disciplinary hearing officers and disciplinary hearing investigators in a major disciplinary action; (2) not giving him a disciplinary write-up or hearing within the required 72 hours of the actual incident; (3) denying him his right to call witnesses by not serving a "form H"[1] or having the form signed by the list of witnesses he provided Defendants Trombly and Bryce; (4) disciplining him solely based upon confidential information provided by two un-named inmates and not giving him their reports; and (5) allowing the guards who conducted the disciplinary hearing to also collect the confidential reports against Mr. McClanahan. CD 10, pp. 7-8.

---

[1]Mr. McClanahan defined a "form H" in his original complaint as a form witnesses are required to sign if they do not want to make a statement. CD 2, p. 8.

**Transfer to MSP September 27, 2012**

Mr. McClanahan was transferred to Montana State Prison on September 27, 2012. During this two-hour transport, he was chained and shackled in a small dog kennel cage of solid stainless steel approximately one and a half feet square by four feet tall. This method of transfer caused him extreme sickness and vertigo. Mr. McClanahan does not know the names of the transport guards. CD 10, p. 8.

**Classification at Montana State Prison**

Once at Montana State Prison, Defendants Steyh, Wigert and Hess moved Mr. McClanahan to a housing unit without a proper or meaningful classification. As a result, he was housed with gang members from whom he had requested separation because of threats against his life. CD 10, p. 8.

**Property**

Mr. McClanahan alleges he was deprived of hygiene and all his properties by MSP property guards K. Marthaler and Sgt. Foster. He alleges nine pages of his properties are still unaccounted for, including items like his eye glasses. CD 10, pp. 9, 11.

**Confinement October 9, 2012 - October 12, 2012**

Mr. McClanahan contends that on October 9, 2012, M. Steyh generated another "bogus" disciplinary action against him when he refused to join her and D.

Hess's prison gangs. Mr. McClanahan was not afforded a disciplinary hearing by Disciplinary Hearing Officer Crozby within 72 hours and was not allowed to gather witness statements and was "ram-rodded" through another "bogus" committee by R. Wigert and M.Steyh. CD 10, p. 9.

As a result, Mr. McClanahan had a nervous breakdown and requested to speak to mental health doctors. Instead he was thrown in a "special hard cell" without clothing and told to kill himself by Guards M. Steyh and Sgt. Grahm. He now has scars on his face and forehead from untreated open self-inflicted wounds. He was left in this hard-cell from October 9, 2012 until October 12, 2012. CD 10, p. 9.

He contends while he was solitary confinement he suffered from prolonged isolation and sensory deprivation, extreme cold, sleep deprivation, his food trays were sprayed with cleaning agents, and his mail was given away. CD 10, pp. 9-10.

**Transfer to California**

On October 10, 2012, Assistant Warden Myron Beeson made a verbal agreement to transfer Mr. McClanahan to California. Mr. McClanahan believes Linda Moody is blocking the transfer because she allegedly knows that the California Department of Corrections will "not play there [sic] game" and will treat him with professionalism. CD 10, pp. 11-12.

## ANALYSIS

**Rule 8**

The Court previously found that Mr. McClanahan's original Complaint violated Rule 8 of the Federal Rules of Civil Procedure. The Amended Complaint is nearly identical to the original complaint and as such it still violates Rule 8. Mr. McClanahan has submitted seven pages of "supporting facts" wherein he again provides a diatribe against Defendants. The Court still cannot discern specific claims from Mr. McClanahan's allegations. Mr. McClanahan simply ignored the Court's warning that it would not "parse Mr. McClanahan's diatribe for facts to support claims he may or may not attempt to state." CD 9, pp. 10-11.

Mr. McClanahan list of potential claims in his Amended Complaint is even more vague than in the original Complaint. He states, "I have been subject to 8th Amendment violations, loss of privileges [sic] and properties without any due process, with extreme prejudice and deliberate indifference." CD 10, p. 5. He then provides a litany of facts without linking those facts to any particular claim. It is not clear which facts Mr. McClanahan wishes to apply to which claims. As such, his Amended Complaint fails to state a claim upon which relief may be granted and it will be recommended for dismissal.

To the extent the Court can discern any potential claims, those claims fail as

set forth below.

**Due Process–Liberty**

Throughout his Complaint and Amended Complaint Mr. McClanahan discussed the unfairness and problems with the prison disciplinary/classification system. While he alleges a denial of due process with regard to his disciplinary hearings and classification, he does not establish the existence of a protected interest. Mr. McClanahan does not allege any facts to support an allegation that the disciplinary action or classifications he received affected his sentence in an unexpected manner, or imposed a hardship that is atypical and significant in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84; Ramirez, 334 F.3d at 860. Even if he was placed in administrative segregation or transferred to another institution, he makes no allegation that the conditions of his disciplinary confinement were such that they implicated a liberty interest. Without an allegation of the denial of a liberty interest, Mr. McClanahan was not entitled to due process. Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (placement in segregated housing in and of itself does not implicate a protected liberty interest entitling a prisoner to procedural due process protections).

**Due Process--Property**

Mr. McClanahan was notified in the Court's Order permitting him to file an

amended complaint that neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In his Amended Complaint, Mr. McClanahan provides no specifics regarding his property, he just alleges that some of it is unaccounted for. Because the State of Montana provides a meaningful post-deprivation remedy for lost or stolen property. Mr. McClanahan has failed to state a procedural due process claim regarding lost property.

**Cruel and Unusual Punishment**

Mr. McClanahan alleges that his two-hour transfer to Montana State Prison in a small confined space caused him vertigo and nausea. This claim fails as a matter of law. Mr. McClanahan does not allege a lasting injury, and the temporary discomfort did not constitute a substantial risk of serious harm.

He also complains about being denied his property and hygiene items for a number of days but again the facts alleged are insufficient to make a showing of conditions posing a substantial risk of serious harm. Mr. McClanahan was provided the legal standard that applies to such a claim in the Court's prior Order and he was given an opportunity to provide additional facts in support of such

14

claims. No additional facts have been presented, he provided no specifics regarding these claims, and the facts alleged are insufficient to state a claim.

**Mental Health Treatment**

Next, Mr. McClanahan alleges he asked for mental health treatment but was placed in a "hard cell"[2] and told to kill himself. He also contends he suffered scars as a result of self-inflicted wounds while he was held in the "hard cell" between October 9 and October 12.

Mr. McClanahan was told in the Court's prior Order that he had to describe how each Defendant was involved in the alleged violation. CD 9, p. 11. There is no information in the Amended Complaint as to who placed Mr. McClanahan in the "hard cell," from whom he requested mental health treatment, whether he requested medical treatment after he received his self-inflicted wounds and if so from whom. The Court gave Mr. McClanahan an opportunity to amend his Complaint, with specific instructions to link his diatribe of facts to specific individual Defendants. He did not do so.

His only allegations in this regard against specific Defendants are his claim that Defendants Steyh and Grahm told him to kill himself. Such conduct, if true, does not rise to the level of a federal constitutional violation. Verbal harassment,

---

[2]Mr. McClanahan does not define "hard cell."

alone, is not a "sufficiently serious" deprivation to establish an Eighth Amendment claim. See Farmer, 511 U.S. at 834 citing Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

**Transfer to California**

Mr. McClanahan has no constitutional right to a transfer to California. The claim fails as a matter of law. Olim, 461 U.S. at 248.

## CONCLUSION

Mr. McClanahan's allegations fail to state a claim upon which relief may be granted as set forth above and in the Order dated March 25, 2013. CD 9. Mr. McClanahan was given an opportunity to correct these defects and he provided no new facts to establish a constitutional violation. Therefore, it is reasonable to assume that the defects could not be cured by further amendments and the case should be dismissed.

**"Strike" under 28 U.S.C. § 1915(g)**

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This dismissal constitutes a strike because Mr.

McClanahan failed to state a claim upon which relief may be granted.

**Certification Regarding Appeal**

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:

> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

17

The finding that Mr. McClanahan's Complaints fail to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

**Address Change**

At all times during the pendency of this action, Mr. McClanahan SHALL IMMEDIATELY ADVISE the Court of any change of address. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

1. This matter should be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. McClanahan's failure to state a claim.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate

Procedure that any appeal of this decision would not be taken in good faith. Mr. McClanahan's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. McClanahan may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If Mr. McClanahan files objections, he must itemize each factual finding to which objection is made and identify the evidence in the record he relies on to contradict that finding. In addition, he must itemize each recommendation to which objection is made and set forth the authority he relies on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude Mr. McClanahan from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo

determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 5th day of August, 2013.

      /s/   Keith Strong
Keith Strong
United States Magistrate Judge